**CLERKS OFFICE US DISTRICT COURT**
**AT ROANOKE, VA**
**FILED**

April 08, 2026

**LAURA A. AUSTIN, CLERK**
BY: **/s/ M. Poff**
**DEPUTY CLERK**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| Wesley Thomas Gallop, Jr., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 7:25-cv-00321 |
| | ) | |
| M.E. Cordle, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Wesley Thomas Gallop, Jr., an incarcerated individual proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1983. Gallop complains about an institutional conviction that he claims was imposed in violation of his due process rights. (Dkt. 23.) Specifically, he claims he was denied access by hearing officer Defendant M.E. Cordle to video evidence that would have been exculpatory. Cordle filed a motion to dismiss this action, asserting that Gallop's case should be dismissed because he established no protected liberty interest that would implicate due process rights. (Dkt. 25.) The court agrees and will grant the motion to dismiss.

### I.    Background

Gallop filed an amended complaint in this action, (Dkt. 23), which is now the operative complaint defining his claims. Gallop's allegations in the amended complaint are as follows: While he was incarcerated at Keen Mountain Correctional Center, he was charged with an institutional infraction of sexual assault upon/making a forcible sexual advance toward

- 1 -

another inmate, a charge referred to by offense code 106b. (*Id.* ¶ 9.)   He was given a hearing in connection with this charge. (*Id.* ¶ 11.)  Prior to the hearing, Gallop requested a review of a video of the incident and asked that it be considered at the hearing because he claimed that the video would show that his touching of the other inmate had been consensual. (*Id.* ¶¶ 7, 9–10, 12–13); *see also* Dkt. 23-3 ¶ 3.)  Gallop's request for the video evidence was denied by Cordle. (Dkt. 23 ¶ 14.)  Cordle rejected the request, noting that the request was not specific enough as to the date and time and had not been submitted timely. (*Id.*, Dkt. 23-2 at 10.)  The copy of the form submitted by Gallop in connection with this action, which he states was the one submitted, does state a specific time and date. (Dkt. 23 ¶ 15; Dkt. 23-3 at 10.)  After the hearing, Gallop was convicted of the disciplinary charge by Cordle, who noted that Gallop had failed to "offer any evidence to refute the charge." (Dkt. 24 ¶ 19.)  The punishment imposed for the offense was a loss of phone privileges for 120 days. (*Id.* ¶ 20.)   Gallop was also referred for a "reassessment of his risk of sexual abusiveness." (*Id.*)  Gallop further claims as "collateral consequences" of the institutional disciplinary charge conviction that he was transferred to a higher security level institution, that he lost his prison job, and that he was characterized as a high-risk sexual aggressor.[1] (*Id.* ¶ 21.)

Based on these allegations, Gallop claims that Cordle violated his procedural due process rights by denying his request for video evidence and by convicting him without consideration of the video evidence.

---

[1] Gallop's original complaint alleged a resulting reduction in the rate of good time accrual, (Dkt.1 at 11), but this allegation was eliminated from the amended complaint.

## II.    Standard of Review

"[T]he purpose of Rule 12(b)(6) is to test the legal sufficiency of the complaint." *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994). To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state[] a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 556 (2007)). In making this evaluation, the court accepts all well-pled facts as true; however, it need not assume the truth of any "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement," as these are not well-pled facts. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678).

Pleadings filed by *pro se* litigants must be construed liberally. *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016). "Principles requiring generous construction of *pro se* complaints are not, however, without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). A *pro se* complaint must still "state a claim to relief that is plausible on its face." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

## III.    Analysis

The court understands Gallop's contention that he was treated unfairly and that the unfair treatment has resulted in less favorable conditions for him. However, even when the alleged unfair treatment is assumed, Gallop's claim fails because of the lack of a protected

liberty interest as explained below. *Cf. Hunt v. City of Toledo Law Dep't*, 881 F. Supp. 2d 854, 867 (N.D. Ohio 2012) ("A general principle in evaluating § 1983 claims is that not all unfair, unwise, or imprudent actions of persons or entities acting under the color of state law are, necessarily, constitutionally unreasonable.").

The Due Process Clause of the Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "To state a procedural due process [claim], a plaintiff must [first] identify a protected liberty or property interest and [then] demonstrate deprivation of that interest without due process of law." *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015). "[A] prisoner claiming a violation of his right to procedural due process must show: (1) that there is a state statute, regulation, or policy that creates such a liberty interest, and (2) that the denial of such an interest imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Martin v. Duffy*, 858 F.3d 239, 253 (4th Cir. 2017) (cleaned up). As long as the conditions of confinement a prisoner is subjected to are "within the sentence imposed upon him" and do not otherwise violate the Constitution, the Due Process Clause "does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983) (quoting *Montanye v. Haymes*, 427 U.S. 236, 242 (1976)).

A liberty interest under the Due Process Clause arises only when, independent of state law, a deprivation exceeds the prisoner's sentence in an unexpected manner or when state law of a mandatory character imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Garrett v. Angelone*, 940 F. Supp. 933, 943 (W.D. Va. 1996) (finding that a prison regulation

- 4 -

creates a liberty interest and implicates due process protections only where the regulation imposes upon the inmate conditions that dramatically depart from the expected conditions of his sentence).

In other words, for an inmate to present a viable due process claim, he must first establish that there is a protected liberty interest at stake in order for the procedural due process guarantees to apply.   Only if an inmate establishes a protected liberty interest at stake, such as a loss of earned good conduct time, is he then entitled to constitutionally required procedural protections before governmental actors can deprive him of that interest.  *See Wolff v. McDonnell*, 418 U.S. 539, 557 (1974).   In sum, "[w]ithout a protected liberty or property interest, there can be no federal procedural due process claim."  *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007).

Here, the claimed direct and collateral consequences of Gallop's disciplinary conviction are insufficient to establish a protected liberty interest.  Gallop claims that as a result of the disciplinary charge conviction, he lost telephone privileges, lost a prison job, was transferred, has a reduced chance of parole or pardon, and suffered deteriorating mental health.  (Dkt. 23 ¶¶ 20–21; Dkt. 33 at 6; Dkt. 23-3 ¶¶ 12–13, 15.)   He also claims that he was referred for assessment of his sexual aggressive tendencies as a result of the conviction.  (Dkt. 23 ¶ 20.) That referral resulted in an assessment which found it appropriate to designate Gallop as a high-risk sexual aggressor ("HRSA").  (*Id.* ¶ 21.)  Gallop claims that as a result of the HRSA designation, he has suffered harassment and abuse by other inmates.  (Dkt. 23-3 ¶ 13.)  He does not claim that the institution or Cordle have taken actions against him as a result of the HRSA designation.

The loss of telephone privileges is not enough to establish a liberty interest. *Diggs v. Johnson*, No. 7:24-cv-00361, 2024 WL 4681622, at *3 (W.D. Va. Nov. 5, 2024) (finding no protected liberty interest where an inmate lost telephone privileges for two years); *Jones v. Andrews*, No. 1:20-cv-00251, 2020 WL 4809440, at *5 (E.D. Va. Aug. 18, 2020) (collecting cases holding that a loss of telephone privileges does not trigger constitutional protections). Nor is the loss of a prison job sufficient to establish a liberty interest. "[I]nmates have no independent constitutional right to a prison job, and as such, prison officials may generally terminate an inmate from a particular prison job for any reason without offending federal due process principles." *Robles v. Sturdinvant*, No. 7:14-cv-00070, 2014 WL 4853409, at *1 (W.D. Va. Mar. 27, 2014), *aff'd*, 583 F. App'x 129 (4th Cir. 2014); *see also Altizer v. Paderick*, 569 F.2d 812, 813 (4th Cir. 1978) (rejecting inmate's due process claim because work assignments are generally within the discretion of the prison administrator); *Alley v. Angelone*, 962 F. Supp. 827, 834 (E.D. Va. 1997) (holding prisoner did not have a protected interest in continued employment).

Gallop claims that the institutional conviction resulted in him being assigned a higher-security level and transferred. Gallop does not contend that he was segregated or moved to a supermax facility. He does not mention any particular condition of confinement that has changed, other than he is now incarcerated at a greater distance from his family members. (Dkt 23-3 ¶ 10.) Generally, "[i]nmates do not have a liberty interest in a particular security classification." *Woodhouse v. Clarke*, No. 7:19-cv-00634, 2021 WL 1216889, at *5 (W.D. Va Mar. 31, 2021); *see also Neal v. Shimoda,* 131 F.3d 818, 828 (9th Cir. 1997) ("[A] prisoner does not have a constitutional right to be housed at a particular institution [or] to receive a particular

security classification") (cleaned up); *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995) ("[A] prison inmate does not have a protectable liberty or property interest in his custodial classification and an inmate's disagreement with a classification is insufficient to establish a constitutional violation."). "[R]eclassification into a different security level is simply an incident of prison life." *Shelton v. Angelone*, 183 F. Supp. 2d 830, 839 (W.D. Va. 2002). Inmates do not have a right to be housed in any particular facility, even if the assignment would be closer to their families. *Meachum v. Fano*, 427 U.S. 215, 225 (1976) ("Neither, in our view, does the Due Process Clause in and of itself protect a duly convicted prisoner against transfer from one institution to another within the state prison system. Confinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose."). Therefore, Gallop has not made any allegations relating to his security classification and transfer which impose "atypical and significant hardship[s] in relation to the ordinary incidents of prison life" that dramatically depart from the expected conditions of his sentence. *See Sandin*, 515 U.S. at 483–84; *see also Garrett*, 940 F. Supp. at 943.

Gallop's affidavit next asserts that the institutional conviction reduces the chance of him being granted a pardon or receiving geriatric parole. (Dkt. 23-3 ¶ 12.) Because pardons and geriatric parole decisions in Virginia are purely discretionary and not matters of entitlement, they do not trigger due process protection. *See* Va. Code Ann. § 53.1-229 (vesting power to grant pardons in the Governor); *Gaston v. Taylor*, 946 F.2d 340, 344 (4th Cir. 1991) ("Under Virginia law, work release, furlough and parole are all characteristically discretionary programs in which Gaston could acquire no entitlement."); *see also Kentucky Dep't of Corrs. v.*

*Thompson*, 490 U.S. 454, 460 (1989) ("[A]n individual claiming a protected interest must have a legitimate claim of entitlement to it.").

Finally, Gallop contends that as a result of the institutional conviction, he was referred for an evaluation of his risk of sexual abusiveness and that that evaluation resulted in his characterization as a high-risk sexual aggressor ("HRSA"), a VDOC designation.[2] Because this issue had not been specifically addressed and because Gallop had not been sentenced for any sexually-related crimes, (Dkt. 23-3 ¶ 11), the court requested supplemental briefing on whether this claimed consequence could be sufficient to establish a liberty interest, (Dkt. 34). Defendants responded, (Dkt. 36), claiming that the HRSA designation does not implicate a protected liberty interest and is no different than other internal prison classifications.

Gallop also responded. (Dkt. 40.) He contends that the HRSA designation imposes a "significant and atypical" burden upon him, but his arguments in this regard are conclusory. (*id.* at 9 (citing only his previously submitted affidavit at Dkt. 23-3 ¶¶ 9–15).) Gallop fails to identify any facts from which it could be concluded that his classification as a HRSA led to any action by VDOC that imposes "atypical and significant" hardships upon him in relation to the ordinary incidents of prison life. Gallop does not state that he has been required to participate in any programming, treatment, or counseling as a result. In fact, he complains that he has not had contact with mental health professionals about this designation. (Dkt. 40

---

[2] Gallop's precise complaint is that the institutional charge conviction resulted in a referral for additional mental health screening. It is the subsequent screening conducted by an individual other than Cordle that resulted in his designation as a high-risk sexual aggressor. Gallop has not claimed that the referral itself was improper or that the referral itself resulted in negative effects. Nonetheless, the court has considered all of the claimed sequelae of the HRSA designation mentioned by Gallop. Similarly, Gallop has not been labeled a "sex offender" by the Virginia Department of Corrections ("VDOC"). The designation is only indicative that he may present a higher risk of being sexually abusive. VDOC Operating Procedure 810.2 (defining HRSA designation).

at 10–11.)   He does not state that he has lost privileges, been restricted in any way, been subjected to enhanced monitoring, or been assigned to any specialized housing.   The HRSA designation seems more geared to protecting potential future victims (correspondingly designated as potential high-risk sexual victims), rather than punishing the designated potential aggressor. *See* VDOC Operating Procedures 810.2 (describing designations and process of assessment at intake) and 730.2(V)(D)(3)(b) (providing that Mental Health Clinicians will meet with those designated as HRSA upon their request to "encourage," not mandate, services and counseling).   Under the regulations, an HRSA designation is not to be disclosed to other inmates.  VDOC Operating Procedure 730.2 (V)(D)(2)(a) (limiting information to medical and mental health personnel and staff involved in housing and programming assignments).

The court agrees that without any claimed VDOC-imposed consequences[3] of the designation, the HRSA designation is like any other internal prison classification that does not create a liberty interest.   Analogously, where inmates have challenged their classifications as a gang member, this Court has found that no liberty interest was implicated. *See Nahwooksy v. Elam*, No. 7:18-cv-00479, 2020 WL 1529374, at *4 (W.D. Va. Mar. 30, 2020) (dismissing due process claim, finding plaintiff failed to identify a liberty interest that was implicated by his classification as a gang member); *Griffin v. Virginia*, No. 7:07-cv-0041, 2008 WL 2944553, at *3–4 (W.D. Va. July 29, 2008) (same) ("Griffin fails to present any authority establishing that

---

[3] Gallop claims that he has suffered from inmate bullying and harassment and a deterioration of his mental health after being designated. (Dkt. 33 at 6; Dkt. 23-3 ¶¶ 13, 15.)  These claimed "downstream" consequences of third-parties unique to Gallop do not suffice to establish a protected interest because what is key is whether a defendant, through their own actions, imposed "atypical" conditions.  Gallop has pointed to no institutional actions associated with the designation that changed his conditions of confinement in an atypical way.  As contended by Cordle, "it is not atypical for inmates to experience mental health struggles or to find that other inmates they encounter are mean or unpleasant."  (Dkt. 36 at 5.)

inmates are constitutionally entitled to a hearing prior to receiving a gang member designation."); *Taylor v. Clore*, No. 7:07-cv-00448, 2007 WL 2892681, at *2 (W.D. Va. Sept. 28, 2007) (same) ("Custodial classifications do not create a major disruption in a prisoner's environment, and a mere chance or probability that a single factor will affect a future parole decision is too attenuated to invoke the Due Process Clause.").

Additionally, in *Thomas v. Heinritz*, No. 1:24-cv-00082, 2024 WL 910376 (W.D. Mich. Mar. 4, 2024), the United States District Court for the Western District of Michigan addressed the same issue presented here. There, following a Michigan prisoner's institutional disciplinary conviction for sexual assault, he was designated as being "sexually aggressive." *Id.* at *2. The plaintiff claimed that the defendants failed to provide him with a hearing before designating him as sexually aggressive and, therefore, violated his right to due process under the Fourteenth Amendment. *Id.* at *7. The court dismissed the due process claim for failure to state a claim upon which relief could be granted. *Id.* at *8. The court reasoned that, "[t]he Supreme Court and the Sixth Circuit Court of Appeals have repeatedly concluded that a prisoner does not have any liberty interest in placement in any particular security classification or housing assignment or program participation or prison employment." *Id.* at *7. The court noted that "[e]ven though some change in the conditions of Plaintiff's confinement may have been caused by the change in his PREA-Aggressor Risk score, the United States Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner." *Id.* at *8. Finally, the court further reasoned that the plaintiff failed to allege any facts from which the court could infer that the classification change "affected the duration of his sentence or imposed an atypical and

- 10 -

significant hardship on Plaintiff in relation to the ordinary incidents of prison life." *Id.* at *8; *see also Gadeson v. Reynolds*, No. C/A 208-3702-CMC-RSC, 2009 WL 4572872, at *4 (D.S.C. Dec. 4, 2009) (granting summary judgment and dismissing on inmate's claims about prison's sexually aggressive determination, noting that it was "not a difficult case"), *aff'd*, 392 F. App'x 234 (4th Cir. 2010).  Accordingly, none of the consequences alleged to have been suffered by Gallop are sufficient to create a protected liberty interest such that he would be entitled to due process rights.  Thus, the amended complaint fails to establish a plausible entitlement to relief as a matter of law.

## IV.    Conclusion and Order

For the above-stated reasons, the court **GRANTS** Defendant's motion to dismiss, (Dkt. 25), and directs the Clerk to close this case.

The Clerk is **DIRECTED** to mail a copy of this Memorandum Opinion and Order to Gallop.

**IT IS SO ORDERED**.

**ENTERED** this 8th day of April, 2026.

_____
HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE